**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TROY BENAVIDEZ, as Personal
Representative of the Estate of Rick
Benavidez, Deceased,

      Plaintiff,

v.                                                                  No. 25-CV-01147

THE UNITED STATES OF AMERICA,
CORECIVIC, INC., JOHN DOES 1-5, in
their individual capacities,
MANAGEMENT AND TRAINING
CORP., and JOHN DOES 6-10, in their
individual capacities,

      Defendants.

**COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT, FOR
CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983, AND FOR NEGLIGENCE
UNDER STATE LAW**

      Plaintiff Troy Benavidez, as Personal Representative of the Estate of Rick Benavidez,

Deceased, by and through his counsel, Harrison & Hart, LLC, brings this action under the Federal

Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–80, for violations of Rick Benavidez's civil

rights under the Eighth and Fourteenth Amendments, 42 U.S.C. § 1983, and for negligence

actionable under state law.

**JURISDICTION AND VENUE**

      1.      This Court has exclusive jurisdiction under 28 U.S.C. § 1346(b)(1) and 28 U.S.C.

§ 2679, as well as jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has supplemental

jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

1

2.    Venue is proper under 28 U.S.C. § 1391, as decedent Rick Benavidez, whose Estate brings this suit, was a resident of New Mexico, Defendants are residents of New Mexico, a substantial part of the events or omissions complained of occurred in New Mexico, and the cause of action arose in New Mexico.

**PARTIES**

3.    Plaintiff Troy Benavidez is the only brother of Rick Benavidez. He was appointed by the Second Judicial District Court in Albuquerque, New Mexico, to serve as the Personal Representative of the wrongful-death Estate of Rick Benavidez, a New Mexico resident who died in El Paso, Texas on May 1, 2023, while in federal custody.

4.    The United States of America is the proper Defendant for claims brought under the FTCA for torts committed by employees of the Federal Bureau of Prisons (BOP).

5.    Defendant CoreCivic, Inc. is a private contractor systematically organized to manage prison facilities, which operates the Cibola County Correctional Center (CCCC) in Milan, New Mexico. Upon information and belief, at all times relevant to the complaint, CoreCivic, Inc. was contracted by Cibola County to manage and operate CCCC, thereby obtaining custody of Rick Benavidez. At all relevant times, Defendant CoreCivic housed federal and state detainees, and had contracts with several New Mexico counties. Defendant CoreCivic employed, trained, and exercised direct supervisory control over the Doe Defendant(s) (1-5) during all relevant periods, who each acted as agents and/or employees of CoreCivic at all times relevant to the complaint.

6.    Defendant Management and Training Corporation (MTC) is a private contractor systematically organized to manage prison facilities, which operates the Otero County Prison Facility in Chaparral, New Mexico. Upon information and belief, at all times relevant to the complaint, MTC was contracted by Otero County to manage and operate the Otero County Prison

Facility, thereby obtaining custody of Rick Benavidez. Defendant MTC employed, retained, trained, and exercised direct supervisory control over the Doe Defendant(s) (6-10) during all relevant periods, who each acted as agents and/or employees of MTC at all times relevant to the complaint.

**FACTUAL BASIS**

**Background**

7.    Rick Benavidez was born on September 5, 1974, in Albuquerque, New Mexico.

8.    Rick Benavidez was raised in Albuquerque and primarily worked on his family-run cattle ranch outside Albuquerque.

9.    Rick Benavidez is survived by his father, Rudy Benavidez, and his mother, Mary Stella Benavidez. He has one brother, Plaintiff Troy Benavidez, and one daughter, Verita Benavidez, who is approximately 11 or 12 years old.

10.    Rick Benavidez was arrested on March 4, 2019, on federal charges of bank fraud, conspiracy, and aiding and abetting.

11.    Rick Benavidez was released to a halfway house on April 24, 2019, and then on July 10, 2019, he was allowed to live at home in Albuquerque with his mother.

**Pretrial Custody at CCCC, Transfer to Multiple BOP Facilities, Competency Evaluation, Release**

12.    On July 9, 2020, Rick Benavidez's conditions of release were revoked on allegations of a new federal offense, and he was taken into custody and held at Cibola County Correctional Center (CCCC), Milan, New Mexico.

13.    Upon information and belief, Rick Benavidez was evaluated upon intake by medical personnel (Doe Defendants 1-5) employed by Defendant CoreCivic, Inc.

3

14. Upon information and belief, Rick Benavidez was not diagnosed with melanoma or advanced metastatic melanoma, despite showing symptoms, including a "grapefruit" sized mass under his left arm.

15. Upon information and belief, Rick Benavidez was not treated for melanoma or advanced metastatic melanoma, nor was he referred out for medical treatment appropriate for melanoma or advance metastatic melanoma.

16. On June 6, 2021, Judge William P. Johnson granted a defense Motion for Psychiatric/Psychological Exam.

17. Rick Benavidez was transferred to FCI Tucson, Arizona (a BOP facility) on or about July 12, 2021.

18. On or about July 12, 2021, Rick Benavidez was given an intake medical evaluation at FCI Tucson. He was seen and evaluated by an unknown medical provider/providers.

19. Upon information and belief, Rick Benavidez was not diagnosed with melanoma or advanced metastatic melanoma, despite showing symptoms, including a "grapefruit" sized mass under his left arm.

20. Upon information and belief, Rick Benavidez was not treated for melanoma or advanced metastatic melanoma, nor was he referred out for medical treatment appropriate for melanoma or advance metastatic melanoma.

21. On or about July 19, 2021, Rick Benavidez arrived at FCI Victorville, California (a BOP facility).

22. On or about July 19, 2021, Rick Benavidez was given an intake medical evaluation at FCI Victorville. He was seen and evaluated by an unknown medical provider/providers.

23.    Upon information and belief, Rick Benavidez was not diagnosed with melanoma or advanced metastatic melanoma, despite showing symptoms, including a "grapefruit" sized mass under his left arm.

24.    Upon information and belief, Rick Benavidez was not treated for melanoma or advanced metastatic melanoma, nor was he referred out for medical treatment appropriate for melanoma or advance metastatic melanoma.

25.    On or about July 23, 2021, Rick Benavidez arrived at MCC San Diego, California (a BOP facility), for his psychological evaluation.

26.    On or about July 24, 2021, Rick Benavidez was given an intake medical evaluation at MCC San Diego. He was seen and evaluated by an unknown medical provider/providers.

27.    Upon information and belief, Rick Benavidez was not diagnosed with melanoma or advanced metastatic melanoma, despite showing symptoms, including a "grapefruit" sized mass under his left arm.

28.    Upon information and belief, Rick Benavidez was not treated for melanoma or advanced metastatic melanoma, nor was he referred out for medical treatment appropriate for melanoma or advance metastatic melanoma.

29.    Although Rick Benavidez arrived at MCC on or about July 23, 2021, he was not seen by a forensic psychologist until September.

30.    Rick Benavidez first met with Dr. Alicia Gilbert, Ph.D., forensic psychologist, on September 14, 2021. Dr. Gilbert conducted a psychological evaluation over September 14, 17, and 24, 2021.

31.    Dr. Gilbert's evaluation included the observation of Rick Benavidez's behavior, medical records, and mental health records. Following this evaluation, Dr. Gilbert made no

diagnosis of melanoma or advanced metastatic melanoma, nor did she refer him out for medical treatment appropriate for melanoma or advance metastatic melanoma.

32. Rick Benavidez was transferred back to CCCC on October 26, 2021.

33. On December 1, 2021, Rick Benavidez was released from pretrial custody and allowed to live at home with his mother.

**Detention at OCPF, Incarceration, Advanced Metastatic Melanoma, Death**

34. On April 29, 2022, Rick Benavidez entered a guilty plea in federal court.

35. On August 19, 2022, while pending sentencing, Rick Benavidez's conditions of release were revoked and he was taken back into federal custody.

36. On August 24, 2022, Rick Benavidez was sentenced by a federal judge to 63 months of incarceration in the BOP.

37. Rick Benavidez was held at the Otero County Prison Facility (OCPF), Chaparral, New Mexico, until his transfer to FCI La Tuna, Anthony, New Mexico (a BOP facility).

38. Upon information and belief, Rick Benavidez was evaluated upon intake at OCPF by medical personnel (Doe Defendants 6-10) employed by Defendant MTC.

39. Upon information and belief, Rick Benavidez was not diagnosed with melanoma or advanced metastatic melanoma, despite showing symptoms, including a "grapefruit" sized mass under his left arm.

40. Upon information and belief, Rick Benavidez was not treated for melanoma or advanced metastatic melanoma, nor was he referred out for medical treatment appropriate for melanoma or advanced metastatic melanoma.

41. On or about November 15, 2022, Rick Benavidez arrived at FCI La Tuna, Anthony, New Mexico.

42.     On or about November 15, 2022, Rick Benavidez presented to FCI La Tuna for a medical intake screening. He was seen and evaluated by an unknown medical provider/providers.

43.     Upon information and belief, Rick Benavidez was not diagnosed with melanoma or advanced metastatic melanoma, despite showing symptoms, including a "grapefruit" sized mass under his left arm.

44.     Upon information and belief, Rick Benavidez was not treated for melanoma or advanced metastatic melanoma, nor was he referred out for medical treatment appropriate for melanoma or advanced metastatic melanoma.

45.     On November 23, 2022, Rick Benavidez was given a 14-day Physician Evaluation and a Health and Physical. He was seen and evaluated by unknown medical providers, including potentially a physician and a mid-level provider.

46.     Upon information and belief, Rick Benavidez was not diagnosed with melanoma or advanced metastatic melanoma, despite showing symptoms, including a "grapefruit" sized mass under his left arm.

47.     Upon information and belief, Rick Benavidez was not treated for melanoma or advanced metastatic melanoma, nor was he referred out for medical treatment appropriate for melanoma or advanced metastatic melanoma.

48.     On December 15, 2022, Rick Benavidez had a follow-up with a mid-level provider. No diagnosis of melanoma or advanced metastatic melanoma was made, nor was he treated for or referred out for medical treatment appropriate for melanoma or advanced metastatic melanoma.

49.     On December 22, 2022, Rick Benavidez presented to sick call and noted that he had not been feeling well for the past week. He described his dizziness as feeling like he was "passing out." He stated that he had lost 24 pounds in the last month. He was given an IV by

medical providers. Medical providers made no diagnosis and planned to follow up at sick call as needed.

50.     On December 27, 2022, Rick Benavidez presented to sick call and noted that he had not been able to eat and felt weak. He was very weak and pale. He complained that he vomited every day for the past week. Medical providers gave him an IV and told him to follow up in the morning.

51.     On December 28, 2022, Rick Benavidez did not show for his medical call out. He stated that he was not feeling well enough yet to attend his call out. Medical providers placed him under daily observation.

52.     On December 30, 2022, Rick Benavidez was evaluated by a mid-level provider and was referred to the Hospitals of Providence Transmountain Campus emergency room in El Paso, Texas, due to dizziness, nausea, vomiting, and a 30-pound weight loss over a one-month period.

53.     On December 30, 2022, Rick Benavidez was evaluated by Transmountain ER, diagnosed with abdominal pain, nausea and vomiting, and sent back to FCI La Tuna, with instructions to return if the symptoms worsen or persist.

54.     The next day, on December 31, 2022, Rick Benavidez was evaluated by a nurse and sent back to Transmountain ER due to no improvement in his symptoms.

55.     Rick Benavidez was admitted to Transmountain and remained there until his discharge on January 3, 2023, when he was transferred back to FCI La Tuna. The Hospital could not make a diagnosis or explain his symptoms. On January 7, 2023, Rick Benavidez was sent back to Transmountain ER and was admitted to the hospital.

56.     On January 8, 2023, Rick Benavidez was admitted to the Hospitals of Providence Sierra Campus.

57.    Because Rick Benavidez complained of a headache, a CT scan was taken of his brain to rule out intracranial abnormality.

58.    The CT scan of his brain revealed three lesions on his brain, including a large hemorrhagic metastatic lesion involving the right frontal lobe with extensive surrounding vasogenic edema and midline shift, suggestive of metastatic cancer.

59.    A biopsy taken from one of the lesions revealed advanced metastatic melanoma.

60.    A subsequent MRI of Rick Benavidez revealed a total of six lesions on his brain.

61.    Rick Benavidez had a CT scan of his chest done, which indicated bulky left axillary (lymph node) masses, suspected of advanced metastatic melanoma following a biopsy.

62.    On January 12, 2023, Rick Benavidez underwent a right frontal craniotomy for resection of a metastatic brain tumor, which pathology showed features consistent with malignant melanoma.

63.    On January 20, 2023, Rick Benavidez was discharged from Sierra Campus with a diagnosis of "advanced metastatic malignant melanoma with brain metastasis."

64.    Rick Benavidez was given a prognosis of "very poor."

65.    On January 20, 2023, Rick Benavidez was discharged to El Paso Long Term Acute Care (LTAC).

66.    On January 31, 2023, Rick Benavidez returned to Sierra Campus and underwent Gamma Knife radiosurgery on five of the metastatic lesions.

67.    Rick Benavidez remained at El Paso LTAC post-craniotomy, with occasional transfers to the Sierra Campus as his condition deteriorated.

68.    On April 19, 2023, Rick Benavidez was transferred back to El Paso LTAC for palliative care.

69.    Rick Benavidez died on May 1, 2023, at El Paso LTAC, while on furlough from FCI La Tuna. He was 48 years old.

**Exhaustion under 28 U.S.C. § 2675**

70.    On May 1, 2025, Plaintiff, as Personal Representative of the Estate of Rick Benavidez, Deceased, through his counsel, Harrison & Hart, LLC, submitted an administrative claim under the FTCA to the BOP.

71.    On May 15, 2025, Regional Counsel for BOP sent a denial of the claim to Harrison & Hart, LLC.

**CLAIM – COUNT 1**
**MEDICAL NEGLIGENCE AND WRONGFUL DEATH ARISING UNDER THE FEDERAL TORT CLAIMS ACT**

72.    Plaintiff incorporates the preceding paragraphs as though fully set herein.

73.    Defendant United States of America, though the BOP and its employees, acting within the scope of their employment, are liable for medical negligence and wrongful death arising under the FTCA, 28 U.S.C. § 1346(b)(1).

74.    The BOP owes a duty of care to all persons charged with or convicted of offenses against the United States. 18 U.S.C. § 4042(a)(2), (3).

75.    Healthcare providers and doctors, including those employed by BOP, owe patients a duty to "possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified [doctors and health care providers] practicing under similar circumstances, giving due consideration to the locality involved."

76.    BOP, through its healthcare providers and doctors, breached its duty of care, in that its employees, including Dr. Alicia Gilbert and the unknown providers at FCI Tucson, FCI Victorville, MCC San Diego, and FCI La Tuna, failed to conform to the recognized standard of

medical practice in the community by failing to correctly identify a medical condition—melanoma and advanced metastatic melanoma—that should have been diagnosed.

77. BOP, through its healthcare providers and doctors, breached its duty of care, in that its employees, including Dr. Alicia Gilbert and the unknown providers at FCI Tucson, FCI Victorville, MCC San Diego, and FCI La Tuna, failed to conform to the recognized standard of medical practice in the community by failing to appropriately respond to and treat Rick Benavidez's medical condition.

78. The failure of BOP's healthcare providers and doctors to correctly identify a medical condition that should have been diagnosed—melanoma and advanced metastatic melanoma—was the cause in fact and proximate cause of Rick Benavidez's worsened condition, pain and suffering, and wrongful death.

79. The failure of BOP's healthcare providers and doctors to appropriately respond to and treat Rick Benavidez's medical condition was the cause in fact and proximate cause of Rick Benavidez's worsened condition, pain and suffering, and wrongful death.

WHEREFORE, Plaintiff prays for actual and compensatory damages against Defendant United States of America.

### CLAIM – COUNT 2
### VIOLATIONS OF THE EIGHTH AND/OR FOURTEENTH AMENDMENTS BY DEFENDANT CORECIVIC, INC. AND DOE DEFENDANTS 1-5

80. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

81. The Eighth Amendment and the Fourteenth Amendment provide protections to persons in state custody to safeguard them from cruel and unusual punishment—including deliberate indifference to serious medical needs or the wanton infliction of pain.

11

82.    Rick Benavidez's medical needs and pain and suffering were sufficiently and objectively serious enough to warrant protection under the Eighth Amendment, the Fourteenth Amendment, or both.

83.    By their acts and omissions as described above, including their failure to correctly identify, treat, and refer a medical condition—melanoma and advanced metastatic melanoma—that should have been diagnosed, Defendants CoreCivic and Does 1-5 violated Rick Benavidez's Eighth and Fourteenth Amendment rights.

84.    Systemic failures, including consistent and prolonged delays in providing adequate medical treatment and refusal to staff adequately enough to promptly identify or prevent life-threatening injuries, amount to a policy or practice of Defendant CoreCivic, which created obvious risks and predictably resulted in the constitutional violations and injuries described herein.

85.    The acts and omissions described above, which were committed while Defendant CoreCivic, and the Doe Defendants (1-5) acted under the color of law, violated Rick Benavidez's right to be free from cruel and unusual punishment under the Eighth Amendment and/or his substantive due process rights under the Fourteenth Amendment. These violations are thus actionable pursuant to 42 U.S.C. § 1983.

86.    The Defendants' acts and omissions proximately caused Rick Benavidez's damages and injuries, including pain and suffering, psychological and emotional distress, and wrongful death, and Defendant CoreCivic's constitutionally deficient policies, customs, training, and programs as described herein were a moving force behind those damages and injuries.

WHEREFORE, Plaintiff prays for compensatory and punitive damages and reasonable attorneys' fees and costs against all Defendant CoreCivic and Doe Defendants (1-5).

**CLAIM – COUNT 3**
**VIOLATIONS OF THE EIGHTH AND/OR FOURTEENTH AMENDMENTS BY**
**DEFENDANT MTC AND DOE DEFENDANTS 6-10**

87.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

88.    The Eighth Amendment and the Fourteenth Amendment provide protections to persons in state custody to safeguard them from cruel and unusual punishment—including deliberate indifference to serious medical needs or the wanton infliction of pain.

89.    Rick Benavidez's medical needs and pain and suffering were sufficiently and objectively serious enough to warrant protection under the Eighth Amendment, the Fourteenth Amendment, or both.

90.    By their acts and omissions as described above, including their failure to correctly identify, treat, and refer a medical condition—melanoma and advanced metastatic melanoma—that should have been diagnosed and properly treated, Defendants MTC and Does 6-10 violated Rick Benavidez's Eighth and Fourteenth Amendment rights.

91.    Systemic failures, including consistent and prolonged delays in providing adequate medical treatment and refusal to staff adequately enough to promptly identify or prevent life-threatening injuries, amount to a policy or practice of Defendant MTC, which created obvious risks and predictably resulted in the constitutional violations and injuries described herein.

92.    The acts and omissions described above, which were committed while Defendant MTC, and the Doe Defendants (6-10) acted under the color of law, violated Rick Benavidez's right to be free from cruel and unusual punishment under the Eighth Amendment and/or his substantive due process rights under the Fourteenth Amendment. These violations are thus actionable pursuant to 42 U.S.C. § 1983.

13

93.     The Defendants' acts and omissions proximately caused Rick Benavidez's damages and injuries, including pain and suffering, psychological and emotional distress, and wrongful death, and Defendant MTC constitutionally deficient policies, customs, training, and programs as described herein were a moving force behind those damages and injuries.

WHEREFORE, Plaintiff prays for compensatory and punitive damages and reasonable attorneys' fees and costs against all Defendant MTC and Doe Defendants (6-10).

**CLAIM – COUNT 4**
**STATE LAW CLAIM FOR PROFESSIONAL NEGLIGENCE AGAINST**
**DEFENDANTS CORECIVIC, MTC, AND DOE DEFENDANTS 1-10**

94.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

95.     Defendant CoreCivic, Defendant MTC, and Doe Defendants 1-10 had a duty under New Mexico law to apply the standards of knowledge, skill, and care used in their respective professional disciplines while addressing Rick Benavidez's serious medical needs and substantial risk of serious harm.

96.     Defendant CoreCivic, Defendant MTC, and Doe Defendants 1-10 breached these duties by failing to correctly identify, treat, and refer a medical condition—melanoma and advanced metastatic melanoma—that should have been diagnosed and properly treated.

97.     The acts and omissions of Defendant CoreCivic, Defendant MTC, and Doe Defendants 1-10 were in willful, wanton, gross, and reckless disregard of their duty to meet the standards of knowledge, skill, and care for their respective professional disciplines, warranting an award of punitive damages.

98.     The professional negligence of Defendant CoreCivic, Defendant MTC, and Doe Defendants 1-10 as described above proximately caused Rick Benavidez's damages and injuries, including pain and suffering, psychological and emotional distress, and wrongful death.

14

99.     Plaintiff is entitled to relief against Defendant CoreCivic, Defendant MTC, and Doe Defendants 1-10 for damages resulting from pain and suffering, psychological and emotional distress, and wrongful death.

WHEREFORE, Plaintiff prays for compensatory and punitive damages and costs and any other such relief as is permitted by law.

## JURY DEMAND

Pursuant to 28 U.S.C. § 2402, there is no right to a jury trial in this suit under the FTCA. However, pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**HARRISON & HART, LLC**

By: *Daniel J. Gallegos*
Carter B. Harrison, IV
Daniel J. Gallegos
Elise C. Funke
924 Park Avenue SW, Suite E
Albuquerque, NM 87102
Tel: (505) 295-3261
Fax: (505) 341-9340
carter@harrisonhartlaw.com
daniel@harrisonhartlaw.com
elise@harrisonhartlaw.com

*Attorneys for the Plaintiff*

**This Filing Has No Exhibits**