**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

TROY BENAVIDEZ, as personal representative of
the ESTATE OF RICK BENAVIDEZ,

Plaintiff,

vs. Case No. 1:25-cv-01147-DHU-DLM

THE UNITED STATES OF AMERICA, CORECIVIC
INC., JOHN DOES 1-5, MANAGEMENT AND
TRAINING CORPORATION, JOHN DOES 6-10,

Defendants.

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant CoreCivic, Inc.'s Motion to Dismiss Plaintiff's Complaint. Doc. 7. The Motion is fully briefed. *See* Docs. 22, 27, and 31. After carefully considering Defendant's Motion, the attendant briefs, the law, and being fully advised of the premises, the Court concludes that the Motion will be **DENIED**.

## I.
## BACKGROUND

This case stems from the death of Rick Benavidez ("Mr. Benavidez"). Plaintiff Troy Benavidez, as personal representative of the Estate of Rick Benavidez, filed a Complaint for Damages under the Federal Tort Claims Act for constitutional violations under 42 U.S.C. § 1983 and for negligence actionable under state law. *See* Doc. 1. As relevant to the Motion before the Court, in 2019 Mr. Benavidez was arrested on federal charges and eventually allowed to live at home in Albuquerque with his mother on pretrial release. *Id.* at 3. On July 9, 2020, Plaintiff alleges Mr. Benavidez was taken into custody and held at Cibola County Correctional Center ("CCCC") in Milan, New Mexico after his conditions of release were revoked on allegations of a new federal

offense. *Id.* Upon information and belief, Mr. Benavidez was evaluated upon intake by medical personnel (Doe Defendants 1-5) employed by Defendant CoreCivic, Inc. *Id.* Plaintiff alleges Defendant CoreCivic, Inc. is a private contractor that manages prison facilities and operates CCCC. *Id.* at 2.

Plaintiff alleges Mr. Benavidez was "not diagnosed with melanoma or advanced metastatic melanoma, despite showing symptoms, including a 'grapefruit' sized mass under his left arm" at the time he was evaluated at CCCC in July 2020. *See id.* Mr. Benavidez "was not treated for melanoma or advanced metastatic melanoma, nor was he referred out for medical treatment appropriate for melanoma or advance metastatic melanoma" while at CCCC. *Id.* at 4.

Subsequently, Mr. Benavidez was transferred to various Bureau of Prison facilities for reasons related to a defense Motion for Psychiatric/Psychological Exam. *Id.* On October 26, 2021, Mr. Benavidez was transferred back to CCCC. *Id.* at 6. On or about November 15, 2022, Mr. Benavidez arrived at FCI La Tuna, Anthony, New Mexico. *Id.* On December 22, 2022, Mr. Benavidez presented for a sick call and indicated he had "not been feeling well for the past week. He described his dizziness as feeling like he was 'passing out.' He stated that he had lost 24 pounds in the last month." *Id.* at 7. He continued to suffer symptoms throughout December 2022. *See id.* at 8-9. On or about January 8, 2023, a CT scan revealed lesions in his brain and a biopsy revealed advanced metastatic melanoma. *Id.* at 9. A CT scan of his chest showed masses, "suspected of advanced metastatic melanoma following a biopsy." *Id.* On January 20, 2023, he was given a diagnosis of "advanced metastatic malignant melanoma with brain metastasis." *Id.* Mr. Benavidez died on May 1, 2023. *Id.* at 10.

On November 17, 2025, Plaintiff filed the Complaint in this case. Doc. 1. Defendant CoreCivic then filed the Motion to Dismiss that is the subject of this order. *See* Doc. 7.

## II.
## LEGAL STANDARD

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint[.]" *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint does not need to include detailed factual allegations, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In making this assessment, "[t]here is no fact-finding, as we accept [plaintiff's] well-pleaded factual allegations as true after setting aside mere legal conclusions. And the plaintiff receives the benefit of the doubt: [courts] view the facts in the light most favorable to the plaintiff and draw all reasonable inferences in [plaintiff's] favor." *Vasquez-Garcia v. Centurion, LLC*, 172 F.4th 1150, 1157 (10th Cir. 2026) (citing *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)); *see also Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

"Together, these principles erect a relatively high bar for a Rule 12(b)(6) dismissal that leaves room for the district court to decide only one, largely legal question: whether the facts

alleged, taken as true, plausibly state a claim upon which relief can be granted." *Vasquez-Garcia*, 172 F.4th at 1157 (citing *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011)). "Plausibility is not probability, simply 'more than a sheer possibility.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678).

## III.
## DISCUSSION

### A. Plaintiff's Claims Against CoreCivic are not Time-Barred.

Defendant CoreCivic argues Plaintiff's § 1983 and professional negligence claims are barred by the three-year statute of limitations in New Mexico. Doc. 7 at 4. Defendant CoreCivic argues Plaintiff's claims against CoreCivic accrued no later than July 12, 2021, when Benavidez was transferred out of CCCC. Doc. 7 at 5. Alternatively, the claims accrued at the absolute latest on December 1, 2021, the last day Plaintiff was detained during his second detention at CCCC. *Id.* at 6. CoreCivic argues in either case Plaintiff's Complaint is untimely as it was not filed until November 17, 2025. *Id.*

Plaintiff argues his claims are not time-barred as they began to accrue, at the earliest, on December 22, 2022, within three years of the Complaint filing. Doc. 22 at 3-4. December 22, 2022 was the date Mr. Benavidez "first expressed not feeling well and first actively sought medical care, as he realized for the first time that something might be seriously wrong." Doc. 22 at 4. This was the earliest date that Defendant CoreCivic's deliberate indifference to Mr. Benavidez's serious medical condition became apparent to him. *Id.*

Generally, "a plaintiff's claims accrue once he or she can file suit and obtain relief." *Est. of Roemer v. Johnson*, 764 F. App'x 784, 789-90 (10th Cir. 2019) (cleaned up). A plaintiff's claim accrues "when the plaintiff has 'a complete and present cause of action.'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997)). Significantly, a plaintiff does not have a complete cause of

action unless and until he or she "knows or has reason to know of the injury" that forms the basis of that action. *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993). For purposes of a § 1983 claim, the "injury" is the alleged constitutional violation. *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998). Therefore, a § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* at 1154 (quoting *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994)).

Critically, the Tenth Circuit recently held that "a claim does not accrue simply because the plaintiff knows that she has a serious medical injury. The facts that tie this medical injury to a *legal* harm must also be known or knowable." *Vasquez-Garcia*, 172 F.4th at 1160. In that case, the Court held that the plaintiff's claims accrued "when she knew or reasonably could have known that a) her injuries were objectively and sufficiently serious and b) the defendants acted with the requisite subjective state of mind, which is deliberate indifference." *Id.*

The parties agree, and the Court finds, that New Mexico's three-year statute of limitations for personal injury claims applies to Plaintiff's § 1983 and professional negligence claims. *See* Doc. 7 at 4; Doc. 22 at 4; *see also Johnson v. Boyd,* No. 21-1014, 2021 WL 5231964, at *2 (10th Cir. Nov. 10, 2021) (concluding district court correctly applied state statute of limitations because § 1983 does not include a limitations period); *Indus. Constructors Corp. v. U.S. Bureau of Reclamation,* 15 F.3d 963, 968 (10th Cir. 1994) ("Where Congress has not enacted an express statute of limitations for a particular cause of action, federal courts generally borrow and apply the most closely analogous state statute of limitations....").

The Court finds that the three-year statute of limitations began to accrue on or about December 22, 2022, because it is alleged this was the first time Mr. Benavidez knew or should have known that he had a serious medical crisis that had not previously been discovered. Although

Plaintiff alleges Mr. Benavidez had a "grapefruit" sized mass under his left arm on July 9, 2020 when he was initially taken into custody and held at CCCC, Doc. 1 at 3, it was not until December 22, 2022 that he presented for a sick call and reported not feeling well for the past week, described dizziness akin to "passing out," and stated he lost 24 pounds over the previous month. Doc. 1 at 8; *see generally, id.* at 3-8. Prior to this date, there are no allegations that he knew or should have understood the severity of his condition. Therefore, it was on this date that he knew or should have known that Defendant CoreCivic had acted with deliberate indifference to his serious medical needs, and that the elements of his professional negligence claim could be alleged. As a result, Plaintiff's Complaint, filed on November 17, 2025, fell within the limitations period. Defendant CoreCivic's request to dismiss Plaintiff's § 1983 and professional negligence claims on this basis is denied.

**B. Plaintiff's § 1983 Claims Against CoreCivic in Count 2 Survive.**

Next, Defendant CoreCivic argues Plaintiff's § 1983 claims fail as a matter of law for a number of reasons. Doc. 7 at 6. The Court will address each argument in turn.

**1) Whether Plaintiff Alleges State Action**

First, CoreCivic argues Plaintiff fails to allege state action in his claim because "Benavidez was a federal detainee at CCCC, such that CoreCivic and its employees were acting under color of federal law, rather than state law, with respect to him." Doc. 7 at 7. Plaintiff argues CoreCivic was acting under color of state law because CoreCivic and its agents derived and exercised their powers "from CoreCivic's contract with New Mexico counties, and thus, from state law." Doc. 22 at 8.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The 'under color of state law' requirement is a jurisdictional requisite for a § 1983 action[.]" *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir.1995) (quoting *Polk Cnty. V. Dodson*, 454 U.S. 312, 315 (1981)). When considering whether a private entity can be considered a state actor, courts must analyze the claim under four well-defined tests: (1) the nexus test; (2) the public function test; (3) the joint action test; and (4) the symbiotic relationship test. *See Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013) (explaining the four tests for determining when a private entity can be considered a state actor).

Here, Plaintiff argues CoreCivic qualifies as a state actor under the public function test. Doc. 22 at 8. When a private entity undertakes a public function—defined as a traditional and exclusive function of the state—it is considered to be a state actor. *Wittner*, 720 F.3d at 776-77. "This test is difficult to satisfy. While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Id.* (quotation omitted). "The function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state. This is a truly unique function and has been traditionally and exclusively reserved to the state." *Giron v. Corrections Corporation of America*, 14 F. Supp. 2d 1245, 1249 (D.N.M. 1998)) (Hansen, J.). When the state is obligated to fulfill certain constitutional standards, "it cannot avoid those obligations and deprive individuals of their constitutionally protected rights by delegating government functions to the private sector." *Id.* at 1250; *see also Rosborough v. Mgmt. & Training Corp.,* 350 F.3d 459, 461 (5th Cir. 2003) (holding that employees of a private prison-management company may be sued under § 1983 because confinement of wrongdoers, though sometimes delegated to private entities, is a fundamentally governmental function); *Ancata v. Prison Health Servs.,* 769 F.2d 700, 703 (11th Cir. 1985) (holding that employees of a private

medical service responsible for treating state prisoners engaged in state action, therefore subjecting it to suit under § 1983, because it performed "a function which is traditionally the exclusive prerogative of the state").

The Court finds Plaintiff has satisfied the under-color-of-state-law requirement because CoreCivic was executing the traditional public function of incarcerating people in its operation of CCCC. Plaintiff alleges CoreCivic is a private contractor that manages prison facilities, it operates the CCCC pursuant to contracts with New Mexico counties, and it houses both federal and state detainees. *See* Doc. 1 at 5. The Court is persuaded by the reasoning in *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F.Supp.2d 114, 141 (D.R.I. 2004), cited by Plaintiff, that it is irrelevant for purposes of this issue that Mr. Benavidez was placed at CCCC on federal charges:

> The Cornell Defendants and the individuals they employ act under color of state law for purposes of 42 U.S.C. § 1983 because they are able to trace their traditional public function of prison operations to the CFDFC, the City of Central Falls, and finally, to the State of Rhode Island. The fact that [the p]laintiff was incarcerated at the Wyatt Facility while awaiting a federal trial is fortuitous because the officials who committed the alleged constitutional violations derived their authority over [the p]laintiff from state rather than federal law.

Doc. 22 at 7. Plaintiff highlights that the *Lacedra* court added:

> [t]he fact that [the p]laintiff was placed at the Wyatt Facility by the U.S. Marshal for the District of Massachusetts (under an arrangement with the Cornell Defendants) does not change this undeniable fact. At times the U.S. Marshal for Rhode Island places federal detainees at the Rhode Island state prison (the Adult Correctional Institutions or "ACI"), particularly female detainees, but that does not convert the correctional officers at the ACI into federal officers acting under color [of] federal authority.

Doc. 7 at 7-8 (quoting *Lacedra,* 334 F.Supp.2d 114, 141, fn.13). The same logic applies here. Though Defendant points to several district court decisions that have found CoreCivic is considered a federal actor when housing federal detainees, Doc. 7 at 7-8, the Court disagrees with

those decisions for all of the reasons already stated. Therefore, the Court concludes Plaintiff has adequately alleged CoreCivic was acting under color of state law for purposes of § 1983.[1]

**2) Whether Plaintiff States a Claim for Deliberate Indifference Under the Eighth or Fourteenth Amendments Against CoreCivic[2]**

Next, Defendant CoreCivic argues that, because "[i]t is well-settled that CoreCivic cannot be held liable under § 1983 simply for employing an alleged tortfeasor under a theory of respondeat superior," Doc. 7 at 11, Plaintiff must show "(1) an underlying constitutional violation by a CoreCivic employee; and (2) that a CoreCivic policy, custom or practice was the "moving force" behind the underlying constitutional violation allegedly committed by a CoreCivic employee." *Id.* (citations omitted). CoreCivic argues Plaintiff fails to make either showing. Doc. 7 at 11-14. As to the first prong, CoreCivic argues Plaintiff has failed to sufficiently allege the subjective element of a claim for deliberate indifference. Doc. 7 at 12-13.[3] CoreCivic asserts Plaintiff has failed to "sufficiently allege the subjective element of a claim for deliberate indifference to a serious medical need against any individual CoreCivic employees." *Id.* at 12. CoreCivic specifies that:

> Plaintiff does not identify any CoreCivic employee who: was aware of the mass or any other symptoms from which the inference could be drawn that Benavidez had melanoma; drew the inference; and then denied or delayed care to Benavidez with that knowledge. (*See generally* Dkt. 1.) This alone is fatal to his deliberate indifference claim, as § 1983 requires a showing of personal participation by each defendant.

---

[1] Given this conclusion, the Court need not address Defendant's argument that allowing Plaintiff to amend his Complaint to assert a *Bivens* cause of action would be futile. *See* Doc. 7 at 9.

[2] Defendant argues that because the deliberate indifference standard applies to pretrial detainees through the Fourteenth Amendment, rather than the Eighth Amendment, and because Plaintiff appears to agree, to the extent Plaintiff alleges an Eighth Amendment claim, it should be dismissed. Doc. 7 at 10, Doc. 27 at 8. Given the lack of dispute, to the extent Plaintiff alleges an Eighth Amendment claim, it will be dismissed.

[3] CoreCivic does not argue that Plaintiff failed to sufficiently allege the objective component. Doc. 7 at 12 ("assuming (without conceding) that Plaintiff has alleged a sufficiently serious deprivation to satisfy the objective element…").

Doc. 7 at 12 (collecting cases).

Plaintiff argues he has sufficiently alleged the subjective element for the deliberate indifference claim. Doc. 22 at 10-11. Plaintiff argues the Complaint,

> explicitly details how CoreCivic's and its agents' acts and omissions, "including their failure to correctly identify, treat, and refer a medical condition—melanoma and advanced metastatic melanoma—that should have been diagnosed . . . violated Rick Benavidez's Eighth and Fourteenth Amendment rights." Complaint at ¶ 83. Plaintiff alleges how these wrongs were the product of CoreCivic's "[s]ystemic failures, including consistent and prolonged delays in providing adequate medical treatment and refusal to staff adequately enough to promptly identify or prevent life-threatening injuries." *Id.* at ¶ 84…Additionally, Plaintiff alleges that Mr. Benavidez had a clearly visible grapefruit sized mass under his left arm—an injury that would have alerted even non-medical personnel to an urgent medical emergency—yet CoreCivic agents evaluated him medically on or around July 9, 2020 but did not diagnose or treat this mass or refer him out for offsite medical treatment.

Doc. 22 at 11. Plaintiff argues these allegations "provide sufficient circumstantial evidence of subjective deliberate indifference—*i.e.*, that the CoreCivic agents were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed for Mr. Benavidez, and these CoreCivic agents likely drew that inference yet failed to take action to address the serious harm." *Id.* at 11.

**a. Plaintiff has established an underlying constitutional violation by CoreCivic employees Does 1-5.**

The Court finds that Plaintiff has sufficiently stated a claim for deliberate indifference under the Fourteenth Amendment. "The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020). To state a claim, the plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. at 989 (quoting *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001)). "This standard includes both an objective component and a subjective component." *Id*. (citing *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018)).

"The subjective component requires Plaintiff to establish that a medical official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Id.* at 990 (internal quotation marks and citations omitted). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate.'" *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1156 (10th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). "Rather, it is enough that an official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Id.* (quoting *Farmer*, 511 U.S. at 843 n.8). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

Here, the Court finds Plaintiff has alleged enough to establish the subjective component of the deliberate indifference standard. Plaintiff alleges that CoreCivic and Doe Defendants 1-5, agents and/or employees of CoreCivic, failed to "correctly identify, treat, and refer a medical condition—melanoma and advanced metastatic melanoma—that should have been diagnosed." Doc. 1 at 12. Plaintiff alleges Mr. Benavidez was initially taken into custody at CCCC on July 9, 2020, and, at intake, he was evaluated by Doe Defendants 1-5. Doc. 1 at 3. Yet he was "not diagnosed with melanoma or advanced metastatic melanoma, despite showing symptoms, including a 'grapefruit' sized mass under his left arm." *Id.* at 4. He was also not treated for melanoma or advanced metastatic melanoma or referred out for medical treatment of these conditions. *Id.* Based on these allegations, namely, the "grapefruit" sized mass under his arm, the

Court concludes that the Doe Defendants had the requisite knowledge of a substantial risk to Mr. Benavidez's health based on the very fact that risk was obvious given the presence and size of the mass.

**b. Plaintiff has alleged that a policy, custom, or practice was the moving force behind the alleged constitutional violation.**

Next, CoreCivic argues Plaintiff has not established "either an actual policy, custom, or practice or a direct causal link between the policy, custom, or practice and the alleged constitutional violation." *Id.* at 14. CoreCivic argues:

> Plaintiff's vague references to "[s]ystemic failures" and "consistent and prolonged delays in providing adequate medical treatment and refusal to staff adequately enough to promptly identify or prevent life-threatening injuries" are irrelevant where Plaintiff does not allege that staff failed to timely diagnose Benavidez due to a failure to timely see him, or that the delay was caused by inadequate staffing. Plaintiff alleges that the mass under Benavidez's arm was obvious, but staff who saw him failed to recognize it for what it was. Thus, there is no connection between these alleged "[s]ystemic failures"—even if they were sufficiently plead, which CoreCivic does not concede—and the alleged constitutional violation. The Court should therefore dismiss Count 2 based on Plaintiff's failure to allege facts sufficient to establish a policy, custom, or practice of CoreCivic that was the moving force behind an underlying constitutional violations by one or more CoreCivic employees.

Doc. 27 at 11. CoreCivic also argues, "Plaintiff's vague allegations pertain solely to the alleged failure to diagnose and treat Benavidez—a 'single isolated incident' that is insufficient to prove the existence of an unconstitutional policy, custom, or practice." Doc. 7 at 14 (quoting *Warner v. City of Roswell*, No. 2:20-CV-00321-RB-GJF, 2020 WL 5821044, at *3 (D.N.M. Sept. 30, 2020)).

In response, Plaintiff asserts,

> CoreCivic also incorrectly argues that Plaintiff has not sufficiently pleaded that a custom, policy or practice of CoreCivic was the moving force behind its underlying constitutional violations. However, Plaintiff's Complaint states: "Systemic failures, including consistent and prolonged delays in providing adequate medical treatment and refusal to staff adequately enough to promptly identify or prevent life-threatening injuries, amount to a policy or practice of Defendant CoreCivic, which created obvious risks and predictably resulted in the constitutional violations and

> injuries described herein." Plaintiff never alleges that CoreCivic is liable for its constitutional violations based on the doctrine of *respondeat superior*, as CoreCivic's Motion implies…Rather, Plaintiff intends to prove that CoreCivic directly violated Plaintiff's constitutional rights..."

Doc. 22 at 11-12 (internal citations omitted).

The Court denies CoreCivic's Motion to Dismiss on this basis. The Court finds Plaintiff has alleged facts sufficient to show that a policy, custom, or practice of CoreCivic was the moving force behind the violation. Municipal employers cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. N.Y.C. Dep't. of Soc. Servs.,* 436 U.S. 658, 691–92 (1978). To establish a *Monell* claim, a plaintiff must demonstrate (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (*i.e.* that "there is a direct causal link between the policy or custom and the injury alleged"). *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993); *see also Monell*, 436 U.S.at 694–95. While the Supreme Court has only applied *Monell* to municipalities, the Tenth Circuit has applied *Monell* to private entities, acting under color of law, that are sued under 42 U.S.C. § 1983. *See, e.g.*, *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1216, n. 13 (10th Cir. 2003). Therefore, private corporations may not be held liable under § 1983 based upon *respondeat superior,* but may only be held liable where their policies caused a constitutional violation. *See Dubbs,* 336 F.3d at 1216. Because the Court has already concluded that a private entity operating a detention facility on behalf of a county is subject to the same liability under § 1983 as a local government entity, the Court will analyze the claims here as if they were brought against a municipal entity.

As Defendant argues, a municipality cannot be held vicariously liable under § 1983 merely because of the acts of its agents. *Monell*, 436 U.S. at 691. In order to establish a recoverable § 1983 claim against a municipal entity, a plaintiff must demonstrate that the deprivation of his rights was

the result of an official policy or custom. *Id.* at 90-91. This standard has been specifically applied to private prison organizations. *See Smedley v. Corrs. Corp.of Am.*, 175 Fed. Appx. 943, 946 (10th Cir. 2005) ("[I]n order to hold [the owner of a private prison] liable for the alleged tortious acts of its agents, [the inmate plaintiff] must show that [the company] directly caused the constitutional violation by instituting an 'official municipal policy of some nature' that was the 'direct cause' or 'moving force' behind the constitutional violations." (citation omitted)).

The Tenth Circuit has described several types of actions which may constitute a municipal policy or custom:

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law' "; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad*., 602 F.3d 1175, 1189-90 (10th Cir. 2010).

The Court finds that Plaintiff has alleged enough to show an informal custom amounting to a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, and that there is a direct causal link between this policy and the injuries alleged here. Plaintiff's Complaint alleges:

> Systemic failures, including consistent and prolonged delays in providing adequate medical treatment and refusal to staff adequately enough to promptly identify or prevent life-threatening injuries, amount to a policy or practice of Defendant CoreCivic, which created obvious risks and predictably resulted in the constitutional violations and injuries described herein.

Doc. 1 at 12. Plaintiff alleges that despite having a "grapefruit" sized mass under his left arm, Doc. 1 at 4, CoreCivic and its agents and/or employees did not "correctly identify, treat, and refer a medical condition—melanoma and advanced metastatic melanoma—that should have been diagnosed." Doc. 1 at 12. Plaintiff alleges that CoreCivic's systemic failures, including delays in providing medical treatment and inadequate staffing, caused CoreCivic to fail to promptly identify and prevent life-threatening injuries, including Mr. Benavidez's ultimately fatal melanoma. The Court finds that these allegations are sufficient. The Court denies Defendant CoreCivic's motion to dismiss based on a failure to establish a policy, custom, or practice as the moving force behind the alleged constitutional violation.

**C. Plaintiff States a Claim for Professional Negligence Against CoreCivic in Count 4.**

Next, Defendant argues Plaintiff has not stated a claim for professional negligence against it because "Plaintiff's allegations fail to show that CoreCivic or any identifiable employee breached a duty of care to Benavidez." Doc. 7 at 15. It argues Plaintiff has not alleged "*how* or *in what manner* either CoreCivic or any identifiable CoreCivic employee(s) – either individually or collectively – failed to provide timely and appropriate medical care" or "what negligence of CoreCivic and/or any of its employees did, or in what manner." *Id.* Plaintiff argues the detail specificized by Defendant is "not required at the pleadings stage, and even rudimentary complaints that lay out the basic facts are sufficient to overcome a motion to dismiss..." Doc. 22 at 12. He asserts his allegations are sufficient. Doc. 22 at 13-14.

"In order to prove medical malpractice, a plaintiff has the burden of showing that (1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the community; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries." *Blauwkamp v. Univ.*

*of N.M. Hosp.*, 1992-NMCA-048, ¶ 13, 836 P.2d 1249. The Court finds Plaintiff's allegations are sufficient to state a claim for professional negligence against CoreCivic. Plaintiff alleges that CoreCivic, its agents, and others "had a duty under New Mexico law to apply the standards of knowledge, skill, and care used in their respective professional disciplines while addressing Rick Benavidez's serious medical needs and substantial risk of harm." Doc. 1 at 14. CoreCivic and its agents breached this duty "by failing to correctly identify, treat, and refer a medical condition—melanoma and advanced metastatic melanoma—that should have been diagnosed and properly treated." *Id*. In the facts section of Plaintiff's Complaint, allegations are made that CoreCivic and its agents failed to do anything to address the grapefruit sized mass under Mr. Benavidez's left arm—a serious medical condition that would have been an obvious medical emergency even for non-medically trained individuals. *Id.* at 3-4. This is enough at this stage. These factual allegations, taken as true, plausibly state a claim upon which relief can be granted. Defendant's motion to dismiss the professional negligence claim is denied.[4]

**D. Plaintiff States a Claim Against John Does 1-5.**

Finally, Defendant argues Plaintiff's Complaint is "devoid of any specific allegations against John Does 1–5 except to state that they were medical personnel who evaluated Benavidez

[4] Defendant CoreCivic also argues that Plaintiff's "professional negligence allegations are exclusively group plead, such that the allegations fail to make clear exactly *who* is alleged to have done *what* to *whom,* to provide each Defendant with fair notice as to the basis of the claims against them as distinguished from collective allegations multiple defendants." Doc. 7 at 16. Defendant cites to *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) and several district court cases to support its argument. But the *Robbins* cite does not actually support its argument. And the district court cases are neither binding nor analogous. For instance, in *Equal Emp. Opportunity Comm'n v. Mile Hi Foods, Co.,* No. 1:24-CV-02703-DDD-KAS, 2025 WL 3771286, at *2 (D. Colo. Sept. 18, 2025), the court dismissed a complaint against a defendant based on insufficient group pleading because that defendant was listed solely in the caption, with absolutely no allegations against it in the complaint. That is not the situation here, where there are numerous allegations against CoreCivic. The Court therefore does not have a basis to agree with Defendant's group pleading argument.

upon intake to CCCC." The Court disagrees. Plaintiff's Complaint describes the John Doe defendants as agents and/or employees of CoreCivic who were the medical personnel that evaluated Mr. Benavidez upon his intake into CCCC. Doc. 1 at 2-3. The Complaint clarifies that these medical providers failed to attempt to treat, diagnose, or refer Mr. Benavidez for off-site medical care despite the obvious presence of a grapefruit sized mass under his left arm. *See id.* at 4. These allegations are sufficient because, taken as true, they plausibly state a claim upon which relief can be granted. Defendant's Motion to Dismiss on this basis is denied.

## IV.
## CONCLUSION

For all of the reasons stated above, Defendant CoreCivic, Inc.'s Motion to Dismiss Plaintiff's Complaint (Doc. 7) is **DENIED**.

**IT IS SO ORDERED**.

DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE